UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GARY NADEN, et al.,

                  Plaintiffs,

            -against-                            08 Civ. 11195 (LAK)

NUMEREX CORP.,

                  Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                          John J. D. McFerrin-Clancy
                          Khizar Sheikh
                          LOWENSTEIN SANDLER, PC
                          *Attorneys for Plaintiffs Ronsen, Orbit One and Lava Lake Technologies*

                          Justin M. Sher
                          ARKIN KAPLAN RICE, LLP
                          *Attorneys for Plaintiffs Naden and Rosenzweig*

                          Kent A. Yalowitz
                          Brandon Cowart
                          ARNOLD & PORTER, LLP

                          Shane P. Coleman
                          Jason S. Ritchie
                          HOLLAND & HART, LLP

                          *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

The individual plaintiffs here seek a preliminary injunction barring defendant from enforcing covenants not to compete that plaintiffs signed when they agreed to work for defendant following their sale to defendants of the assets of their company.  This is the Court's decision following an evidentiary hearing.

*Facts*

A.    *Background*

This case is a skirmish in a larger war between plaintiffs David Ronsen, Scott Rosenzweig and Gary Naden, shareholders and former executives of Orbit One Communications, Inc. ("Orbit"), on the one hand, and defendant Numerex Corporation, to whom plaintiffs sold their business, on the other.

David Ronsen, a former firefighter and resident of Bozeman, Montana, created Orbit in 2000.[1]  The company, also located in Bozeman,[2] provided satellite communications and tracking services to government agencies, contractors, and private businesses.[3]

As Orbit grew, Ronsen hired others to assist him with the business.  In 2005, he hired plaintiff Scott Rosenzweig, a business development executive.[4]  A year later, Ronsen hired plaintiff

---

[1]      Ronsen Aff. ¶ 2.

[2]      Hearing Transcript ("HT") 22:2-3.

[3]      Ronsen Aff. ¶ 3.

[4]      Rosenzweig Aff.  ¶¶ 4, 7.

3

Gary Naden, an experienced engineer in the satellite communications technology industry.[5] Rosenzweig and Naden eventually became, respectively, ten percent and six percent equity owners of Orbit.[6]  Ronsen retained an eighty-four percent ownership interest in the company.[7]

Some time in 2006, Orbit, already a leading provider of satellite GPS tracking devices,[8] became interested in expanding its services to include cellular communications technology.[9]  It entered into a contract for cellular data services with defendant Numerex Corporation ("Numerex"), a Pennsylvania corporation headquartered in Atlanta, Georgia,[10] that provides cellular, wireless, and satellite based communications services to clients located across the country.[11]

During the negotiation of this contract, Numerex broached with Ronsen the question whether he was interested in selling the company.[12]  A week after Orbit concluded its contract with Numerex, Stratton Nicolaides, Numerex's chief executive officer, flew to Bozeman to meet with

---

[5]     HT 82:10-83:4.

[6]     HT 83:12-17; 95:12-96:4.

[7]     HT 21:14-15.

[8]     Ronsen Aff. ¶ 3.

[9]     HT 23:15-24:5.

[10]    HT 24:2-5; 108:13-16.

[11]    HT 108:13-16; 110:6-115:13.

[12]    HT 24:6-14.

4

Ronsen[13] and began what matured into negotiations that culminated in the execution by Orbit and Numerex of an asset purchase agreement on July 31, 2007 (the "APA").[14]

B.    The Acquisition

The APA provided in substance that Numerex would acquire all of Orbit's assets.[15] Numerex agreed to pay $5.5 million at closing into an escrow account, with an additional $500,000 due sixty days after closing in exchange.[16]   The APA contained also an earn out provision under which Numerex agreed to pay Orbit additional compensation, in equity and cash, if Orbit met certain revenue and other targets.[17]

At the same time, Ronsen, Rosenzweig and Naden entered into employment agreements with Numerex pursuant to which they agreed to run the Numerex satellite division that formerly had been Orbit.[18]   The employment agreements contained, among other things, severance and non-competition provisions.[19]

--------

[13]

HT 24:12-25.

[14]

Yalowitz Decl. Ex. 1 at 42.

[15]

Id. at 9, ¶ 1.1.

[16]

Id. at 10, ¶ 1.3(a)(i)-(ii).

[17]

Id. ¶ 1.3(a)(iii)-(vi); Ex. B; Schedule 1.3.

[18]

Ronsen became president, Rosenzweig vice president of business development, and Naden chief technology officer, respectively.  Yalowitz Decl. Ex. 1 at 73-74, ¶5(b).

[19]

Id. at Ex. D.

Both the APA and the employment agreements contained New York governing law clauses and provisions consenting to jurisdiction in New York.[20]

C.       *The Covenants Not to Compete*

The non-competition covenants of all three plaintiffs provided that plaintiffs, upon leaving Numerex's employ, would not (1) "directly or indirectly . . . own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business in which [Numerex] . . . was engaged during the one year" preceding plaintiffs' resignation[21] or (2) interfere with, solicit, or "attempt to entice away" from Numerex any contract, agreement, or current or prospective customer, in each case for the duration of a contractually defined non-competition period.[22]  The non-competition periods differed among the plaintiffs and, in each case, depended upon the reason for departure from Numerex.

In Ronsen's case, departure without "good reason," as defined in the agreement, would trigger a non-competition period of the longer of (1) one year following his resignation and (2) until December 31, 2010.  If, however, Ronsen left Numerex for "good reason," the non-competition period would be only six months.[23]  In the cases of Rosenzweig and Naden, the non-

---

[20]

*Id.* at Ex. 1 at 39, ¶ 9.7; Ex. D, 76, ¶15, 85, ¶ 15, 93, ¶ 15.

[21]

*Id.* at 73-74, ¶ 5(a); 83, ¶ 5(a); 91, ¶ 5(a).

[22]

*Id.*

[23]

*Id.* at 72-73, ¶¶ 3(e), 4(b).

6

competition period was six months if the departure was "for good reason" and otherwise one year.[24]

### D.    Post-Closing Events and Litigation

As often happens in transactions like this, plaintiffs' employment relationship with Numerex did not work out and litigation, of which this case represents only one piece, ensued.

#### (a)    Ronsen's New York Action Against Numerex - Action No. 1

In January 2008, just five months after the parties closed,  Ronsen – who still was employed by Numerex – and Orbit[25] sued Numerex in Supreme Court, New York County, for over $20 million in damages.  Their complaint alleged that Numerex breached its employment agreement with Ronsen by diminishing his executive authority and thus prevented Ronsen from obtaining his full earn out compensation.[26]  Numerex removed the case to this Court on the basis of the parties' diversity and counterclaimed for breach of fiduciary duty, breach of contract, indemnification, and setoff.[27]

---

[24]

Id. at 82, ¶¶  3(d), 4(a); 90, ¶¶  3(d), 4(a).

[25]

As the transaction was a purchase by Numerex of Orbit's assets, Orbit itself remained in existence under the ownership of Ronsen, Rosenzweig and Naden.

[26]

Cpt., *Orbit One Communications, Inc. v. Numerex Corp.*, No. 08 Civ. 905 (LAK) (filed Jan. 25, 2008), ¶¶ 1, 85, 93, 98-99, 105-06.

[27]

Ans. & Counterclaim, *Orbit One Communications, Inc. v. Numerex Corp.*, No. 08 Civ. 905 (LAK) (filed Mar. 10, 2008).

     (b)     *The Departures of the Individual Plaintiffs from Numerex*

Ronsen resigned from Numerex in April 2008.[28]  Naden and Rosenzweig followed in June 2008.[29]  The parties disagree as to whether they left for "good cause," but the point is not material to the disposition of this motion given both the ground on which the motion is decided and the parties' agreement, for purposes of the motion, that the durations of the non-competition periods are those that would apply in the event of departures without "good reason."

     (c)     *Numerex's Action Against Plaintiffs - Action No. 2*

In July 2008, on the heels of the departure of Rosenzweig and Naden, Numerex sued them in this Court for breach of fiduciary duty and of their severance and non-competition agreements.[30]  A motion to dismiss for, *inter alia,* lack of personal jurisdiction was denied by this Court on January 13, 2009.

     (d)     *The Present Action – Action No. 3*

 Two weeks later, Ronsen, Rosenzweig and Naden commenced this action in the District of Montana.  The complaint alleges that their covenants not to compete are overly broad and therefore unenforceable, and they moved in Montana for a preliminary injunction restraining their enforcement.  On Numerex's motion, however, Judge Cebull of the District of Montana transferred

---

[28]

     Cowart Aff. Ex. 20.

[29]

     Naden Aff. ¶ 8; Rosenzweig Aff. ¶ 11.

[30]

     Cpt., *Numerex Corp. v. Rosenzweig*, 08 Civ. 6233 (LAK) (S.D.N.Y., filed Jul. 9, 2008).

8

the action to this Court.[31]  It is the preliminary injunction motion originally filed in Montana that is the subject of this decision.

### (e)    The Claim of Injury

All of the individual plaintiffs claim to have received offers of employment from companies involved in the satellite communications industry and to have been asked to assist others in the industry in developing new products since their departures from Numerex.[32]  According to plaintiffs, they thus far have declined to pursue these offers and opportunities due to the threat that Numerex would enforce their non-competition agreements.[33]  Moreover, they claim that they will be prejudiced severely by the rapid pace of technological change if they are forced to sit on the sidelines throughout the remaining periods of their non-competition agreements.[34]

Conspicuously absent, both from plaintiffs' affidavits and their hearing testimony, is any factual support for these claims.  No prospective employers or business opportunities have been identified.  No basis has been shown for supposing that Ronsen and Rosenzweig have any material technical education or expertise, let alone any that would become obsolete if they were

---

[31]    Order, *Naden v. Numerex Corp.*, CV-08-107-BLG-RFC (D. Mont., filed Dec. 9, 2008).

[32]    Ronsen Aff. ¶ 20; Naden Aff. ¶¶ 14, 20; Rosenzweig Aff. ¶¶ 13-14, 25.

They also have formed a new company, Lava Lake Technologies, LLC ("Lava Lake"), to take advantage of some of these opportunities.  Ronsen Aff. ¶ 22.

[33]    Ronsen Aff. ¶¶ 20, 22; Naden Aff. ¶¶ 14, 19; Rosenzweig Aff. ¶¶ 13, 34.

[34]    Ronsen Aff. ¶¶ 25-28; Naden Aff. ¶¶ 24-27, 28; Rosenzweig Aff. ¶¶ 29-30, 36.

forced to remain out of the industry for a while.  While Naden is an engineer,[35]  the claim that remaining out of the industry for the remaining five months of his non-competition period would render his expertise unsalable or obsolete is unsubstantiated.  Moreover, there is not a shred of evidence that there are no prospective employers who, if convinced that there were a reasonable chance of invalidating plaintiffs' non-competes, would not hire them.[36]

## Discussion

What really is going on here is not hard to fathom.  The ultimate issue between the parties is whether and to what extent Orbit and, through Orbit, the individual plaintiffs are entitled under the earn out clause of the APA to additional compensation for the sale of Orbit's assets to Numerex.  By leaving the company, the individual plaintiffs have left Numerex without the people who made what now is its satellite division attractive and thus put pressure on Numerex.  Numerex, for its part, doubtless sees its threat to enforce the non-competition covenants for the maximum possible periods as putting pressure on plaintiffs.  So this motion for a preliminary injunction, whatever else it may be, is an attempt by plaintiffs to alter the relative strength of their bargaining position by eliminating for the duration of the earn out litigation – which will outlive the maximum remaining duration of the Rosenzweig and Naden covenants and might outlive the maximum

---

[35]   HT 82:10-12.

[36]   Of course, the existence of a potentially enforceable non-compete could well be a negative factor in any hiring decision.  But the law reports are filled with cases in which employers have hired individuals who have been subject to such contracts and then litigated their enforceability. *See, e.g.*, *Hodach v. Caremark Rx, Inc.*, 374 F. Supp.2d 1222 (N.D. Ga. 2005); *Shapiro v. Regent Printing Co.*, 549 N.E.2d 793 (Ill. App. 1989).

remaining duration of Ronsen's – a Numerex pressure point.  And the fact that this action was filed in Montana reflects this.

New York, the law of which the parties agreed would govern their legal relationships, enforces covenants not to compete, within some limits, where as here the covenants are executed in connection with the sale of a business.[37]  Montana,  at least in plaintiffs' view, takes a much more restrictive view and, moreover, has a statute that radically limits the geographical scope within which even a valid covenant will be enforced.[38]  Likewise, plaintiffs take the view that Montana does not frequently enforce contractual governing law clauses, at least against Montana residents.[39]  They fairly obviously brought this action – Action No. 3 – in an attempt to take advantage of what they believe to be Montana's much more favorable law.  But it ultimately is unnecessary to determine whether this attempt to litigate in or, at least, to capture and bring to New York the law of, Montana should succeed.  Nor is it necessary to give any weight to the Court's perception of the parties' motives.  For plaintiffs' motion founders for an entirely independent  reason.

The standard for a preliminary injunction is well-established. The moving party "'must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the

---

[37]

> *E.g.*, *Reed, Roberts Asocs., Inc. v. Strauman*, 40 N.Y. 2d 303, 307, 386 N.Y.S.2d 677, 679 (1976); *Purchasing Assocs., Inc. v. Weitz,* 13 N.Y.2d 267, 271, 246 N.Y.S.2d 600, 603 (1963); *Ashland Mgmt., Inc. v. Altair Invs. NA, LLC*, 869 N.Y.S.2d 465, 2008 N.Y. Slip Op. 10061 (1st Dep't 2008); *Shearson Lehman Bros. Holdings, Inc. v. Schmertzler.* 116 A.D.2d 216, 222-23, 500 N.Y.S.2d 512, 516 (1st Dep't 1986).

[38]

> *See* Plaintiffs' Br. at 13-16.

[39]

> *See id.* at 9-13.

merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party.'"[40]   The threat of irreparable injury is a *sine qua non*.[41]   "[I]f there is no irreparable injury, there can be no preliminary injunction."[42]   Moreover, "a clear showing of the threat of irreparable harm" is essential to justify a preliminary injunction.[43]   The threatened irreparable harm "must be ... actual and imminent, not remote or speculative."[44]   In other words, a possibility of irreparable injury is not enough; a likelihood is required.[45]

Plaintiffs contend that they will suffer irreparable harm in the form of lost business opportunities absent a preliminary injunction.   They argue that they currently have business opportunities that will be lost due to delay if the non-competition covenants are enforced.[46] Additionally, they state that technology of the sort with which plaintiffs are concerned may become obsolete within two years.[47] If plaintiffs are not permitted to return to work in their field for the

---

[40]
   *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999) (citing *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)).

[41]
   *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981).

[42]
   *Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 406 (S.D.N.Y. 1997).

[43]
    *See Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir.1976); *Cedar Swamp Holdings, Inc. v. Zaman*, 472 F. Supp.2d 591, 595 (S.D.N.Y. 2007).

[44]
    *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *accord Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

[45]
   *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

[46]
   Rosenzweig Aff. ¶ 34; HT 90:2-19; 98:14-23.

[47]
   Naden Aff. ¶ 24; Rosenzweig Aff. ¶ 29.

duration of the non-competition agreements, they argue, it will be more difficult for them to return to the industry, as technology will have changed in the intervening period and they will suffer harm to their reputations as industry insiders.[48]   The Court, however, does not credit these arguments.

First, plaintiffs' claims about their inability to take advantage of employment and business opportunities are vague and unsubstantiated.  Without any detail about what specific opportunities existed with what prospective employers or co-venturers, it is impossible to evaluate the extent to which they were substantial or, if they were, the reasons they have not been pursued. If there were opportunities, did they fall short of fruition because Ronsen or the co-venturer did not wish to take the chance that Numerex would sue – or because there were insurmountable business hurdles?  Or is Ronsen – who received the lion's share of the down payment of $5 million, conceded that he is suffering no financial hardship and wishes to remain in Montana[49] – content for the present to litigate without attempting a new venture in these troubled economic times?  And while Naden and Rosenzweig are not so comfortably situated, there is no evidence that they have lost any real employment opportunities, assuming *arguendo* that they really are looking for employment, which may well be unlikely in view of their having formed Lava Lake with Ronsen as a launching pad for a new joint endeavor once the Numerex situation is behind them.

The claims about technological obsolesence are equally unconvincing.  There has been no showing that either Ronsen or Rosenzweig has technical expertise of a sort that is threated with obsolescene, much less that the pace of technological change, particularly given the present

---

[48]       Naden Aff. ¶ 29; Rosenzweig Aff. ¶ 36; Ronsen Aff. ¶ 28; HT 90:20-91:20; 98:24-99:9.

[49]       Ronsen Aff. ¶ 31; HT 21:14-15; 38:2-9; 42:7-10.

13

state of the economy, threatens either.  In any case, Rosenzweig and Naden have only five months

left on their covenants, even assuming the maximum period claimed by Numerex.  And the Court

certainly is not persuaded that their expertise, such as it is, will be out of date come June.

In the last analysis, it was plaintiffs' burden to demonstrate clearly the existence of

an actual and imminent threat of irreparable injury.[50]  The vagueness and conclusory nature of the

affidavits and testimony of the three individual plaintiffs leaves this Court unpersuaded.  It finds that

plaintiffs have not demonstrated the requisite threat.

*Conclusion*

For the foregoing reasons, the Court finds that plaintiffs have failed to establish any

material threat of irreparable harm. Accordingly, the motion for preliminary injunction is denied.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated:         January 20, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[50]

*See Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007).